**ENTRY ORDER**
2020 VT 26
SUPREME COURT DOCKET NO. 2020-054
FEBRUARY TERM, 2020

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Chittenden Unit, |
| | } | Criminal Division |
| Angela M. Auclair | } | |
| | } | DOCKET NO. 4288-12-19 Cncr |
| | } | |
| | | Trial Judge:  A. Gregory Rainville |

In the above-entitled cause, the Clerk will enter:

¶ 1.    Defendant appeals the trial court's decision to hold her without bail.  She argues that although she is eligible to be held without bail under 13 V.S.A. § 7553, the trial court should have exercised its discretion to release her on bail.  We conclude there was no abuse of discretion, and therefore affirm.

¶ 2.    Defendant was charged with aiding in the commission of first-degree murder and obstruction of justice.  Specifically, with regard to the first-degree murder charge, the information alleges that defendant knowingly participated in a common plan with her son to steal a firearm, knowing that her son would use the firearm to unlawfully kill her husband, David Auclair.  That charge carries a maximum sentence of life imprisonment without the possibility of parole.

¶ 3.    The State moved to hold defendant without bail pursuant to 13 V.S.A. § 7553.  Section 7553 permits the court to hold a defendant without bail when the defendant is "charged with an offense punishable by life imprisonment" and "the evidence of guilt is great."  This Court has held that to determine whether the evidence of guilt is great, "the trial court applies the standard of proof articulated in Rule 12(d) of the Vermont Rules of Criminal Procedure."  State v. Orost, 2017 VT 110, ¶ 6, 206 Vt. 657, 179 A.3d 763 (mem.).  If these requirements are met, a presumption against release arises.  See State v. Ford, 2015 VT 127, ¶ 10, 200 Vt. 650, 130 A.3d 862 (mem.) ("A presumption against release arises if substantial, admissible evidence, taken in the light most favorable to the State and excluding modifying evidence, can fairly and reasonably show defendant guilty beyond a reasonable doubt." (quotation omitted)).  "The trial court then must exercise its discretion in determining whether or not to impose bail and conditions of release."  State v. Avgoustov, 2006 VT 90, ¶ 2, 180 Vt. 595, 907 A.2d 1185 (mem.).  In doing so, it may look to the factors listed in 13 V.S.A. § 7554(b).  Ford, 2015 VT 127, ¶ 10.

¶ 4.    The court held a weight-of-the-evidence hearing on December 23, 2019 and January 14, 2020.  Following the hearing, defendant filed a post-hearing memorandum.  She did

not dispute that "the evidence of guilt [was] great" for the purposes of 13 V.S.A. § 7553. Instead, she argued that the court should exercise its discretion to return her to the community under the factors listed in 13 V.S.A. § 7554(b).

¶ 5. The court found that the evidence of guilt was great and declined to release defendant because it found that several factors weighed against a discretionary grant of release. It relied most heavily on two findings. First, it found that defendant's mother—whom defendant had presented as a responsible adult who could oversee defendant's activities if she was released—was not fit for that role. Second, it found that defendant would not abide by any set of court-imposed conditions, based on evidence that she had repeatedly contacted an individual via telephone and email despite a condition prohibiting her from doing so. The trial court noted several other factors suggesting that defendant was a risk of flight, and found that defendant posed a potential danger to certain individuals if released. It therefore granted the State's motion to hold without bail. Defendant appealed.

¶ 6. We review the trial court's denial of discretionary bail for an abuse of discretion. Ford, 2015 VT 127, ¶ 8. "In exercising its discretion to release a defendant, the trial court may look to the factors listed in § 7554 . . . ." Id. ¶ 10. Those factors include:

> the nature and circumstance of the offense charged; the weight of the evidence against the accused; and the accused's family ties, employment, character and mental condition, length of residence in the community, record of convictions, and record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings. Recent history of actual violence or threats of violence may be considered by the judicial officer as bearing on the character and mental condition of the accused.

13 V.S.A. § 7554(b)(2). "Thus, the trial court's discretion is broad, but the bail decision cannot be arbitrary." Ford, 2015 VT 127, ¶ 10 (citing Avgoustov, 2006 VT 90, ¶ 2). Because the court found great evidence of guilt in its § 7553 analysis, the "presumption is against release" and the burden is on the defendant to overcome that presumption. Id. ¶ 11.

¶ 7. Defendant argues that the trial court abused its discretion in several ways. She asserts that the court abused its discretion in: (1) concluding that she was a risk of flight; (2) relying on her violations of the court's order not to contact certain individuals; (3) concluding that defendant's mother could not serve as a responsible adult; (4) ignoring the weakness of the case against defendant; (5) ignoring several other factors listed in 13 V.S.A. § 7554(b) that were raised in her memorandum; and (6) concluding that she posed a danger to several individuals if released. We address each contention in turn.

¶ 8. Defendant first argues that the trial court abused its discretion in relying on the nature of the charges against her as a factor suggesting a risk of flight. Defendant emphasizes that she "was aware that she was facing a murder charge for five months between the time of her initial police contact and the date of her arrest." She remained in the community during this period even though, very early in the process, a detective told her, "I can't wait to arrest you." Under these

circumstances, defendant asserts, "the [c]ourt's conclusion that the filing of charges suddenly made her a risk of flight is unsupported and highly speculative."

¶ 9. We conclude that the trial court's statements regarding the flight risk were reasonably supported. The trial court recognized that defendant had remained in the community during the investigation. However, it noted that the circumstances had changed after she was charged with a crime carrying a life sentence, for which the court found great evidence of guilt, creating an impetus for flight not present before her arrest. The court also found that defendant's ties to Vermont are "more tenuous than she represents," because she indicated at various times a desire to move to Pennsylvania and Florida. To the extent the trial court relied on these findings, it did not abuse its discretion.

¶ 10. Defendant next argues that the trial court abused its discretion in relying on defendant's violations of the court's order not to contact certain individuals. She asserts that those violations do not demonstrate that she would be either a danger to the community or a risk of flight. She also argues that the violations are not yet proven and rely on speculation.

¶ 11. The violations relate to defendant's continued contact with a person named John Turner. At arraignment on December 11, 2019, the court ordered defendant held without bail and imposed a requirement that defendant have no contact with several individuals related to the case, including Turner. Nevertheless, the court found, "from December 16-30, 2019, phone records show at least 40 calls from defendant to Mr. Turner; these calls were made to [defendant's mother's] home, referring to Turner by the pseudonym 'Tim George.' " Defendant's mother admitted that at least some of these conversations took place. In addition, after the January hearing, the State filed affidavits from a detective and correctional employee describing defendant's email contact with a "new, non-existent male, 'Ted George.' " The "Ted George" email account is registered to defendant's address, and investigators believe that the email account belongs to John Turner. Regardless of whether the violations have been proven in a separate proceeding, the trial court was within its discretion in relying on the evidence before it, including phone records, sworn affidavits, and the testimony of defendant's mother.

¶ 12. The trial court found that defendant's violations of the no-contact requirement demonstrate defendant's "willingness to engage in deceptive behavior designed to circumvent this court's orders, and . . . lead ineluctably to the conclusion that she will not abide by any conditions of release." Defendant's willingness to comply with conditions of release is a factor that a court may consider in determining whether to release a defendant who is subject to being held without bail under § 7553. See, e.g., Orost, 2017 VT 110, ¶ 11 (holding court was within its discretion to consider violations of outstanding protective orders); State v. Henault, 2017 VT 19, ¶ 5, 204 Vt. 628, 167 A.3d 892 (mem.) (holding court was within its discretion to consider violations of terms of home detention). The court did not abuse its discretion in doing so here.

¶ 13. Third, defendant argues that the trial court abused its discretion in finding that her mother was not an acceptable responsible adult. She points out several facts that support her mother's ability to serve in this role: for instance, she has a residence available that would keep defendant away from others, she is home all the time, and she indicated a willingness to report any violation by defendant. Defendant also asserts that her mother "assisted the police in their effort to investigate" the issue of whether defendant was violating the no-contact condition.

¶ 14.    We find no abuse of discretion.  The trial court's decision that defendant's mother was not suited to serve as a responsible adult was supported by admissible evidence, much of it uncontested by defendant.  The court found that defendant's mother showed little ability to control what occurs at her home and on her property, including not knowing that stolen items were present in her backyard.  It found that she was uncertain about the number and identity of individuals living in her home.  And it found that defendant's mother had helped facilitate defendant's contact with Turner, despite knowing that they were not supposed to communicate.  Contrary to defendant's arguments on appeal, this finding was supported by the evidence: defendant's mother testified that she was aware Turner was using a false name to communicate with defendant from her home, that she permitted Turner to be present while she was on the phone with defendant, and that she never reported the conversations to the police.

¶ 15.    Fourth, defendant contends that the trial court ignored the weakness of the State's case, which should have been considered as a factor in her favor.  She argues that the State's case was weak because "the only direct evidence connecting [defendant] to the shooting" was the testimony of one witness, and that testimony was "highly suspect" due to potential bias and inconsistencies in the witness's story.  The credibility of this witness, she argues, should have been considered by the court because one of the factors under § 7554(b) is "the weight of the evidence against the accused."  13 V.S.A. § 7554(b).

¶ 16.    In the context of a § 7553 weight-of-the-evidence hearing, the phrase "weight of the evidence" generally refers to whether, under a Rule 12(d) standard, the State has put forward enough evidence of guilt to establish a presumption against release.  See Orost, 2017 VT 110, ¶ 5 (describing Rule 12(d) standard).  When the weight of the evidence is "great," meaning it satisfies a Rule 12(d) standard, the presumption guiding the second step of the analysis—applying the § 7554(b) factors—flips, and the burden shifts to the defendant to persuade the court to exercise its discretion to set bail or conditions of release. Orost, 2017 VT 110, ¶ 6.  In that sense, the court's analysis of the § 7554(b) factor relating to the "weight of the evidence against the accused" is contained within its § 7553 finding that the evidence of guilt is great.  State v. Rondeau, 2017 VT 21, ¶ 13, 204 Vt. 625, 167 A.3d 332 (mem.).

¶ 17.    Defendant argues that the trial court failed to properly assess "the weight of the evidence" under § 7554(b) in a different sense: she contends that the court failed to consider the weakness of the State's case as a factor favoring bail or release on conditions.  Had it done so, defendant argues, it would have determined that the State's main witness is not credible, that its case against defendant is accordingly weak, and that, as a result, the court should not order defendant held without bail.

¶ 18.    In the context of a § 7554(b) analysis, the weight-of-the-evidence factor can also refer to the relative strength of the State's case against the defendant.  See, e.g., State v. Hasham, No. 2004-238, 2004 WL 5582085 *2 (Vt. May 2004) (unpub. mem.), https://www. vermontjudiciary.org/sites/default/files/documents/eo04238.pdf   [https://perma.cc/ZEK6-3QJ3] (citing court's conclusion that evidence against defendant was "not overwhelming" as factor supporting reduction of bail).  In this context, the trial court is not bound to the Rule 12(d) standard, and could consider the credibility of the State's witnesses and modifying evidence in exercising its discretion.  See Henault, 2017 VT 19, ¶ 7 (holding that analysis of weight of evidence under § 7554(b) is subject to "trial court's broad discretion").

¶ 19. In this case we conclude that the trial court did not abuse its broad discretion in failing to determine that the State's case was weak and that defendant should be released on bail or conditions as a result. In considering whether to grant discretionary bail, the trial court is not required to discount witnesses' testimony based on credibility. See Orost, 2017 VT 110, ¶ 11 (affirming discretionary denial of bail where court "accept[ed] the allegations [against defendant] as true"). Moreover, the State's case is not based solely on one witness's testimony, but also relies heavily on phone records that appear to support a conclusion that defendant orchestrated the burglary whereby her son acquired the murder weapon. In addition, the State presented evidence that defendant made misleading statements to police officers. Given this record, the trial court did not abuse its discretion by failing to assess the credibility of the State's witness; failing to conclude that the State's case, while sufficient under a Rule 12(d) standard, is weak; and failing to conclude that this factor tips the balance against a hold-without-bail order.

¶ 20. Fifth, defendant contends that the trial court ignored several other § 7554(b) factors that weighed in her favor. Specifically, she points out that she lacks a serious criminal record, does not have a history of missing court dates, has always worked and supported herself, owns a home, and has never been known personally to be violent.

¶ 21. The court was not required to explicitly consider each of these factors. Although it may be best practice to do so, "under § 7553 the presumption is against release and there is no requirement that a court consider all of the factors listed in § 7554 when exercising its discretion." Ford, 2015 VT 127, ¶ 11; see also Henault, 2017 VT 19, ¶ 8 (holding that "a trial court may look at the § 7554(b) factors when deciding whether to grant a defendant bail," but that "the language of § 7554(b) that requires consideration of each factor in determining conditions of release is not applicable"). Here, the trial court made clear that its decision was based primarily on two factors, which it found to be controlling: the lack of an acceptable responsible adult who could supervise defendant, and the court's finding that defendant would not abide by any conditions of release. "While the trial court could have provided a more detailed analysis of the 13 V.S.A. § 7554(b) factors, its discussion of the multiple significant factors that were central to its analysis was sufficient in this case . . . ." Orost, 2017 VT 110, ¶ 11.

¶ 22. Finally, defendant argues that the trial court abused its discretion in relying on testimony from two witnesses that they feared her. She argues that under State v. Suave, fear of contact itself is insufficient to deny bail. 159 Vt. 566, 574, 621 A.2d 1296, 1301 (1993). She also points to our holding in State v. Lontine for the proposition that to establish a potential threat to others under 13 V.S.A. § 7553a, the State must meet a clear-and-convincing standard of proof, and argues that the clear-and-convincing standard cannot be met in this case. 2016 VT 26, ¶¶ 45-46, 201 Vt. 637, 142 A.3d 1058 (mem.).

¶ 23. We first note that the legal standard applicable to this case is different than those applied in Suave and Lontine. Suave involved § 7575, which allows a judicial officer to revoke the right to bail entirely upon making specific findings. Two of the findings that can support a revocation of bail are that the accused has "intimidated or harassed a victim, potential witness, juror, or judicial officer in violation of a condition of release" or "violated a condition or conditions of release that constitute a threat to the integrity of the judicial system." 13 V.S.A. § 7575(1), (3). In Suave, we determined that neither condition was met where a witness was merely "in danger of contact by the defendant." 159 Vt. at 574, 621 A.2d at 1301. Lontine was decided under § 7553a,

5

which applies to crimes involving acts of violence. Under that statute, a court is permitted to hold a defendant without bail where, among other things, the State can show by clear and convincing evidence that the defendant poses a threat of physical violence to any person. 13 V.S.A. § 7553a. In that case, we noted that the standard imposed by the statute was "not an easy one for the State to sustain," because it requires the State to "prove that a set of facts exists as to future events." 2016 VT 26, ¶ 46. In both <u>Suave</u> and <u>Lontine</u>, the burden was on the State to overcome the usual presumption in favor of release. See <u>id</u>. ¶ 45 (noting that § 7553a is "exception" to general rule and that State has burden to prove factors permitting denial of bail); <u>Suave</u>, 159 Vt. at 573, 621 A.2d at 1300-01 ("Our constitutional values require that liberty is and must remain the norm and detention prior to trial or without trial is the carefully limited exception." (quotation omitted)).

¶ 24. In this case, in contrast, the burden is on defendant to persuade the court that discretionary release is warranted. Defendant has conceded that the State has met its burden under the § 7553 weight-of-the-evidence standard, and therefore "the presumption is switched so that the norm is incarceration and not release." <u>Orost</u>, 2017 VT 110 ¶ 6; see also <u>Ford</u>, 2015 VT 127, ¶ 11 (holding that court was within its discretion to rely on "serious nature of the charges" in considering whether to deny bail). Here, defendant did not offer evidence sufficient to persuade the court that any conditions of release would protect the public. See <u>Ford</u>, 2015 VT 127, ¶ 13 (noting burden of proof and affirming where defendant did not demonstrate home detention would adequately protect public).

<u>Affirmed</u>.

BY THE COURT:

_____
Beth Robinson, Associate Justice


_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice

6